FILED
2009 Jun-05  PM 12:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **TAZEWELL T. SHEPARD, as Trustee for The Chapter 7 Estate of Strickland & Davis International, Inc., and SAMARA CONSULTANT GROUP, et al.,** | } } } } | |
| | } | |
| **Plaintiffs,** | } } | |
| **v.** | } } | **Case No.:  4:02-CV-0707-RDP-TMP** |
| **S & DAVIS INTERNATIONAL, INC., et al.,** | } } } } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is before the court on Motions to Dismiss Sixth Amended Complaint (Doc. #414) by Defendant Roy Davis (Doc. #419), filed March 12, 2009, Defendant Strickland & Davis International Disc Corporation (Doc. #420), filed March 12, 2009, and Defendants Native American Development, LLC, Cindy Denise Taylor, Voncille H. Davis, David Wayne Davis, and Melissa Suzanne Terrell (Doc. #432), filed April 8, 2009.  In the motions, Defendants argue that Plaintiffs' claims in their Sixth Amended Complaint are barred by res judicata and/or collateral estoppel.  As explained below, Defendants' motions are due to be denied.

## I.        Procedural History

To say that the procedural history of this case is convoluted would be the greatest understatement made during the more than seven years since Plaintiffs filed their original complaint. In an attempt to bring some clarity to this case before proceeding, the court will here engage in the excruciatingly laborious task of recounting the entire procedural history of this case – the good, the bad, and the ugly.

On March 19, 2002, Samara Consultant Group and A.M. Samara (hereinafter collectively "Samara") filed their Complaint (Doc. #1) against S & Davis International, Inc. ("International"), Roy Davis ("Davis"), Mrs. Roy Davis ("Mrs. Davis"), David Davis ("D. Davis"), Voncile Davis ("V. Davis"), Phillip A. Geddes ("Geddes"), and Strickland & Davis International Disc Corporation ("DISC") asserting the following claims: Count I – Accounting (All Defendants); Count II – Breach of Joint Venture Agreement (International & Davis); Count III – Breach of Fiduciary Duty (All Defendants); Count IV – Misrepresentation (Davis & International); and Count V – Declaratory Judgment/Constructive Trust (All Defendants). In the Complaint, Samara alleged that Samara Consultant Group, represented by A.M. Samara, entered into a joint venture agreement with International, represented by Davis, to bind themselves and their companies to do business in the Republic of Yemen for their mutual benefit with profits to be divided on a 50/50 basis. Pursuant to that agreement, International entered into a contract with the Republic of Yemen for delivery of grain. The Republic of Yemen defaulted on that contract. That resulting breach of contract dispute was arbitrated by the Grain and Feed Trade Association (GAFTA) in London, England. An award was rendered in favor of International on June 5, 1998 in the amount of $17,310,000.00.

The Complaint further alleges that in January 1999, Samara, Davis, and International agreed that the balance of the money collected on the arbitration award, after expenses, would be divided on a 50/50 basis. After filing suit in the Northern District of Alabama (Case No. CV-98-J-3141-NW) to enforce the arbitration award and appeal to the Eleventh Circuit, the court confirmed the award and awarded interest from July 4, 1998 until September 11, 2001. The total judgment entered in favor of International was $27,150,315.53.

2

Samara then alleged that in November 2001, without its consent, International and Geddes (attorney for International in the dispute with the Republic of Yemen) settled all claims for a payment of $16,325,000.00. International forwarded Samara $1,000,000.00 as partial payment and refused to pay any more of the settlement. Samara prayed for the remainder of its share of the original judgment amount, which it contended was half of $27,150,315.53 minus attorneys fees and the $1,000,000.00 already paid, expenses, and punitive damages.

On March 20, 2002, Samara moved for a temporary restraining order or preliminary injunction (Doc. #2) requiring Defendants to safeguard the proceeds of one half of a settlement received by International on or about November 1, 2001. The court held a hearing on the motion for a preliminary injunction on April 1, 2002. (*See* Doc. #235 at Ex. 1). Judge Robert B. Propst denied a preliminary injunction by written order on April 30, 2002. (Doc. #23). In his findings of fact and conclusions of law (Doc. #22), Judge Propst found no showing of substantial likelihood of success on the merits because of a bona fide question of whether the joint venture agreement covered the Yemen wheat deal and further found that Samara had an adequate remedy at law.

On April 9, 2002, Samara amended the complaint to include Count VI – Refund of Attorney Money/Equitable Relief asserting claims against attorney Philip A. Geddes. (Doc. #8).

On April 10, 2002, Defendants filed their Answer and counter-claims (Doc. #10) asserting that the joint venture agreement did not apply, and even if it did apply, Samara owed Defendants 50% of the expenses related to this case.

On April 12, 2002, Samara filed its Answer to the counter-claims (Doc. #14) agreeing that reasonable and necessary expenses should be deducted from the settlement, but reasserting that Defendants had refused to pay Samara's share of the settlement after expenses.

3

On April 26, 2002, Samara moved for partial summary judgment on the issue of liability. (Doc. #19). In that motion, Samara charged that Davis had backdated a letter that purportedly rescinded the joint venture agreement on April 10, 1997, but was actually typed for file in 1999.

On May 31, 2002, Judge Propst denied, by margin order, Samara's motion for partial summary judgment. (Doc. #37).[1]

On August 27, 2002, Samara filed a motion to amend the complaint (Doc. #39) based on representations made by Davis during his deposition. Subsequently, on August 30, 2002, Samara moved to dismiss claims against Mrs. Davis, D. Davis, and V. Davis without prejudice. (Doc. #40). The court granted both motions on September 6, 2002. (Docs. #41, 42). Samara filed its third amended complaint (Doc. #43) on September 9, 2009, adding Count VII – Fraudulent Transfer against Davis, International, and DISC and changing the names of International and DISC to match their legal names.

On December 16, 2002, Samara filed a motion for summary judgment (Doc. #51) against Defendants International and Davis for one half of the net distribution of the settlement of the underlying claim against Yemen after fees and expenses ($6,219,025.75) and minus the $1,000,000.00 already received for a total amount sought of $2,109,512.50.

On January 7, 2003, Defendant Geddes filed a motion for summary judgment. (Doc. #59). In the motion, Defendant Geddes argued that he was entitled to one-third of the settlement proceeds with the Republic of Yemen, but accepted less; that he owed no duty to Samara, as he was not its attorney; and that Samara incurred no damages as a proximate result of his alleged omissions.

---

[1] Judge Propst neither entered an opinion nor offered any reasoning for this denial.

4

On January 15, 2003, Samara filed a motion for summary judgment (Doc. #70) against Defendant Geddes for failing to protect its interests in the underlying settlement and failing to warn Samara that he was not protecting its interests.

On January 15, 2003, Defendants International and Davis filed a motion for summary judgment. (Doc. #72).

On March 3, 2003, Judge Propst entered a memorandum opinion (Doc. #93) and order (Doc. #94) on Samara's and Defendants International and Davis' cross-motions for summary judgment. Judge Propst denied Samara's motion in full. He also denied Davis' motion with respect to Samara's claims for an accounting and breach of contract, but granted Davis' motion with respect to all other claims. In the opinion, Judge Propst merely restated the parties' positions, yet failed to offer any reasoning behind that decision. Rather, he simply referred to the "proceedings with regard to the preliminary injunction."[2]

On April 19, 2004, a jury trial began on Counts I and II against International, Davis, DISC, and Geddes. At the trial, Defendants made an oral motion for judgment as a matter of law (Doc. #140), which Judge Propst granted with respect to Defendant Davis.

On April 21, 2004, the jury returned a verdict in favor of Samara in the amount of $1,075,851.27. (Doc. #145). On April 22, 2004, Judge Propst entered an interlocutory judgment in favor of A.M. Samara and against International in that amount, pending issues of interest on the jury verdict. (Doc. #146).

On April 26, Samara filed a motion for accounting of all disbursements and income derived from proceeds of the settlement between International and the Republic of Yemen (Doc. #147) and

---

[2] The record is almost completely devoid of the content of the referenced proceedings.

a motion for additur.  (Doc. #148).  Samara also filed a motion for award of pre-judgment interest (Doc. #154) on May 6, 2004.  These motions were all referred to Magistrate Judge T. Michael Putnam.  Judge Putnam held oral arguments for Samara's motion for additur on May 17, 2004. (Doc. #264).

On May 19, 2004, Samara filed a renewed motion for judgment against International for $2,109,512.50.  (Doc. #159).  (This was essentially the same as its motion for additur).  Judge Propst denied the motion for additur (Doc. #169) and the motion for increased judgment (Doc. #170) on June 16, 2004.

On June 15, 2004, Judge Propst entered an order (Doc. #167) on Samara's oral motion for a constructive trust.  (Doc. #144).  Judge Propst denied the motion as to Defendant Geddes, granted the motion as to the corporate defendant(s),[3] and consolidated the aspect of the motion which sought to impose a constructive trust as to Davis with Samara's motion for accounting and referred it to Judge Putnam.  Pending the Report and Recommendation from the magistrate judge, Judge Propst imposed a constructive trust on monies or assets of International and DISC for interlocutory judgment of $1,075,851.37 in favor of Samara (Doc. #174) on June 22, 2004.  Judge Putnam also ordered Davis to file a statement affirming that sufficient assets were on hand to satisfy judgment, or explain why they were not available.[4]

On June 18, 2004, Defendants asked the court to reconsider or clarify its June 15, 2004 order imposing the constructive trust on DISC and Davis.  (Doc. #172).  Defendants argued that they were

---

[3] It is unclear whether Judge Propst intended to include DISC as one of the corporate defendants referenced in this order, since the parties and Judge Propst sometimes have grouped DISC with Davis rather than the corporate defendants.

[4] To date, it appears that Davis has never complied with that order.

essentially dismissed from the case when the court granted summary judgment to defendants on all claims but I – Accounting and II – Breach of Joint Venture Agreement.  Defendants also moved the court to reconsider its referral of the constructive trust issue regarding Davis, arguing that he was dismissed from the case at trial, and, therefore, the court did not have jurisdiction to impose a constructive trust upon him without a violation of due process.  This motion was referred to the magistrate judge.  (Doc. #173).

On June 24, 2004, Judge Propst entered a memorandum opinion (Doc. #178) and order (Doc. #179) granting Geddes' motion for summary judgment and denying the motion for summary judgment filed by the Samara against Geddes.  He found that there was no substantial evidence that Geddes had an attorney-client relationship with Samara; that his only contract was with Davis; that Samara was not a plaintiff in the federal action brought by Geddes; that Geddes' only client received the proceeds; and that Geddes had no authority to distribute funds to a non-client.  Geddes was then terminated as a party.

On July 1, 2004, Judge Putnam entered his Report and Recommendation (Doc. #187), finding that the court should impose a constructive trust on Davis and DISC, *whether or not they had already been dismissed with prejudice*.  Because much of Judge Putnam's discussion is relevant to the instant issues, it is quoted here at length:

> Alabama law seems to recognize that a constructive trust can be imposed on the grantee of a fraudulent conveyance even though the grantee is not a party to the litigation between the grantor and his creditor seeking the property conveyed.  [*citing First National Bank v. Love*, 167 So. 703, 706-707 (Ala. 1936); *Cotton Energy Corp. v. Smith*, 718 So.2d 1142 (Ala. Civ. App. 1998); *Swan v. Magnusson*, 418 So.2d 844, 845 (Ala. 1982); *Yates v. Guest*, 416 So. 2d 973, 977 (Ala. 1982); *American Nat'l Bank & Trust Co. v. Powell*, 178 So. 21, 29-30 (1937)]

7

. . . .

Certainly, the jury's verdict has now determined that not only was the plaintiff a partner with S. & Davis [International] in a joint venture, but that the joint venture included the Yemen wheat deal. As a partner, the jury found that plaintiff is entitled to another $1,075,851.37, over and above the $1,000,000 already paid him. Implicit in the existence of the partnership is the plaintiff's status as a creditor of S. & Davis with respect to his share of the net partnership proceeds; insofar as S. & Davis received partnership funds, to which he is entitled a share, he is a creditor of S. & Davis, entitled to be paid his share just as any creditor would be entitled to be paid. As such, even the voluntary conveyance of the settlement proceeds from S. & Davis to DISC Corporation subjects DISC Corporation to a constructive trust for the benefit of S. & Davis's creditors, including plaintiff. Similarly, any voluntary conveyances from S. & Davis to Davis himself would create a constructive trust, with Davis as trustee for the benefit of plaintiff as a creditor. Thus, both DISC Corporation and Davis, to the extent that either have received settlement proceeds from the Yemen wheat deal, are liable to plaintiff to maintain a constructive trust over those proceeds.

On the other hand, both Davis and DISC Corporation argue that these very claims against them were dismissed by the court, first when the court granted summary judgment to DISC Corporation on count VII of the Third Amended Complaint and, at trial, when Davis's motion for judgment as a matter of law was granted as to all claims against him personally. They contend that these decisions by the court, dismissing them as parties, now precludes granting similar relief against them in the form of a constructive trust and an accounting. Plainly such decisions were interlocutory in nature; there has been no final judgment, no appeal to create a law-of-the-case bar, nor does res judicata or issue preclusion prevent the court from reversing its earlier decisions and granting equitable relief. The jury focused on the factual issue whether the Yemen wheat deal was part of the joint venture partnership between plaintiff and S. & Davis. Now that that question has been answered, nothing precludes the court from considering whether plaintiff is entitled to the *equitable* remedies of a constructive trust and an accounting to tract and secure the *res* of the arbitration settlement proceeds. There is no fact dispute necessitating a trial, jury or non-jury, that Davis was the president and sole shareholder of S. & Davis, and that he controlled both S. & Davis and DISC Corporation. There is no dispute that the settlement proceeds were paid to S. & Davis, and there is no apparent dispute that S. & Davis's net, pretax proceeds were paid over to DISC Corporation. Under [Alabama law], the voluntary donation of the proceeds to DISC Corporation constituted a fraudulent conveyance as to S. & Davis's creditors, including

8

plaintiff, regardless of whether there was any intent to defraud or even whether DISC Corporation was on notice of S. & Davis's debt to plaintiff.

      While it is true that both Davis and DISC Corporation were dismissed from the case, no final judgment has been entered. The court can easily revisit and vacate those earlier decisions, reinstate Davis and DISC Corporation as defendants, and grant the equitable relief. The court of appeals has held:

  "The district court plainly had the authority to reopen the record and to consider the new evidence. The court had such authority at least until . . . when it entered the final judgment. *See* Fed.R.Civ.Pro. 59; . . . ; *LaFever, Inc. V. All-Starr ins. Corp.*, 571 F.2d 1367, 1368 (5th Cir. 1978). *Prior to the entry of judgment (and the denial of the defendants' motion for a new trial), the court had the power to revisit the entire case.*" *LaMarca v. Turner*, 995 F.2d 1526, 1548-49 (11th Cir. 1993) [emphasis added by Judge Putnam].

Because the decision to grant DISC Corporation summary judgment and to dismiss Davis as a matter of law were interlocutory in nature, the court has not lost jurisdiction over either the defendants or the claims, and to the extent the earlier decisions erroneously failed to grant the requested equitable relief, they can be vacated. The court's order of June 15, 2004, effectively did that by granting a constructive trust in favor of the plaintiff against any of the settlement proceeds being held by either Davis or DISC Corporation. Because the court had the equitable power to do this, particularly after the jury's finding that the proceeds of the Yemen wheat deal were partnership assets, plaintiff's motion for imposition of an equitable trust was properly granted, and his motion for an accounting from Davis also should be granted.

(Doc. #187 at 7-9). Judge Propst accepted and adopted this report and recommendation on July 27, 2004. (Doc. #194).

    On July 23, 2004, Samara filed three motions: (1) a motion for judgment against Davis by piercing the corporate veil of International and/or finding that he is the alter ego of International (Doc. #191); (2) a motion to set aside summary judgment granted in favor of DISC and to impose judgment against DISC as International's alter ego (Doc. #192); and (3) a motion for order enforcing the constructive trust by ordering Davis to pay the amount of judgment to the Clerk of court pending

final resolution.  (Doc. #193).  Judge Propst referred all of these motions to Judge Putnam on July 26, 2004.

On August 4, 2004, Samara filed a motion for judgment against Davis (Doc. #195) based on testimony Davis offered at trial and a motion to withdraw its previous motion for judgment against Davis by piercing the corporate veil.  (Doc. #196).  On August 11, 2004, Judge Propst granted the latter (Doc. #197) and denied the former.  (Doc. #198).

On September 7, 2004, Judge Propst entered final judgment (Doc. #204) on the jury's verdict and certified it under Rule 54(b).  The parties agreed that the amount of prejudgment interest should be calculated at 6% per annum.  The total judgment was, therefore, $1,264,125.47, including prejudgment interest.  The court reserved the "authority to enter further orders regarding the claims of constructive trusts and the enforcement of constructive trusts and any other issues."[5]

On October 18, 2004, Samara moved for an order enforcing the constructive trust by ordering Davis and DISC to pay the amount of judgment.  (Doc. #205).  This motion was referred to Judge Putnam on October 21, 2004.

On November 17, 2004, Judge Propst adopted Samara's proposed final judgment order over the Defendants' objections.  (Doc. #213).  This order granted prejudgment interests for 34 months, rather than 35, as indicated in the previous order.  That brought the total judgment with prejudgment interest against International to $1,258,747.57.  The court indicated that, to the extent DISC and

---

[5] Here is where Defendants, at one time, claimed that Samara waived its claims for an accounting.  However, Defendants read (incorrectly) the following language as a waiver of an accounting claim: "Plaintiff has waived any claim for an accounting of profit on the amount owed." The accounting referred to in the order refers only to a potential method for calculating prejudgment interest, the parties agreeing to employ a rate of 6% rather than engaging in the more time consuming chore of performing an accounting of profits on the amount of the jury award.

Davis were earlier dismissed as parties, said dismissals related only to the legal claims subject to jury verdict. Judge Propst vacated those dismissals to the extent, if any, that they purported to dismiss equitable claims. The court further ordered as follows:

> [T]hat the previously imposed constructive trust on monies or assets in the possession of Strickland & Davis International, Inc. d/b/a S & Davis International, Inc. and the Strickland & Davis International DISC Corporation is hereby adopted and made final and the amount of the constructive trust is increased to $1,258,747.57 in favor of A.M. Samara. A constructive trust is also imposed on settlement monies and proceeds in the possession of Roy Davis individually for the same amount.
>
> Based on the affidavit of Roy Davis and the representations previously made to the Court, the Court hereby enforces the constructive trust. Roy Davis, individually, is ordered to pay the amount of judgment to the Clerk of the Court within seven (7) days. Until said money is paid to the Clerk of the Court, Roy Davis, Strickland Davis International and Strickland and Davis International DISC Corporation are ordered to refrain from disposing or transferring any money or assets to other persons or entities other than ordinary expenses without the express permission of this Court. When the full amount of judgment is paid into the Clerk's Office, the constructive trust will be dissolved pending further orders of this Court. In the event that any Defendant in this case appeals the judgment in this case, or any aspect of the judgment including the constructive trust, Roy Davis shall pay to the Clerk of the Court an additional amount equal to 10% of the judgment as surety for interest occurring during the appeal. The payment of the judgment, plus the 10% of judgment, to the Clerk's Office will be a sufficient appeal bond to stay recovery of the judgment. This closes this case subject to further execution or enforcement.

(Doc. #213 at 2-3).

On November 19, 2004, Judge Propst overruled Defendants' objections to the proposed order (adopted by the court as Doc. #213) and on November 22, 2004, Judge Propst denied Defendants' motion to vacate or set aside the order granting Samara's motion for imposition of a constructive trust.

On November 29, 2004, Defendants moved to alter/amend the final judgment to allow Defendants to secure monies for a supersedeas bond for an appeal, and thus allow them to pledge, mortgage, or otherwise transfer monies to do so.  (Doc. #214).  By order (Doc. #216) on December 6, 2004, and with the consent of the parties, Judge Propst amended the final judgment to allow Defendants to pay $250,000 within ten days of the order and the balance within thirty days of the order.  Also, the judgment was altered to allow Defendants to stay the execution of the judgment pending appeal by depositing the amount of the judgment plus 10% into the court.  Finally, the court amended the judgment to allow Davis to transfer or dispose of assets as necessary to pay the judgment plus 10% into the court.  On December 20, 2004, $250,000.00 was deposited on behalf of the Defendants.  (Doc. #217).

On January 5, 2005, Defendants filed a notice of appeal.  (Doc. #218).  That same day, Defendants also filed a motion for a forty-five day extension of time (Doc. #219) for Davis to pay the balance of the judgment (plus 10%) into the court, stating that he made his best efforts, but was unable to secure the funds.

On January 27, 2005, Samara filed a motion to hold Davis in contempt (Doc. #224) for failing to pay the remainder of the judgment into court.  This motion was referred to Judge Putnam on January 28, 2005.

On February 1, 2005, Samara filed a second motion to hold Davis in contempt (Doc. #225) for cancelling his own deposition.  Samara had noticed the deposition in an attempt to find out why monies were not available to satisfy the judgment (as Davis and his attorney had represented so many times on the record).  Davis indicated that Samara would have to go through Michael E. Lee, his bankruptcy counsel, to reschedule the deposition.

12

On February 2, 2005, Judge Putnam set Samara's motion for contempt for a hearing on February 23, 2005.  (Doc. #228).  Davis filed a suggestion of bankruptcy (Doc. #229) on February 7, 2005.  In that filing, he indicated that on February 2, 2005 he filed a Voluntary Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Alabama, case number 05-80478-11.

On February 18, 2005, Samara filed a motion to enforce the judgment and release funds (Doc. #231), and to have the court find that Davis' Chapter 11 Individual Bankruptcy Petition did not stay or otherwise affect Samara's efforts to collect the judgment against International.  Samara also requested that the $250,000.00 paid to the Clerk's Office by DISC be paid to counsel for Samara.[6]  On February 22, 2005, Judge Putnam cancelled the contempt hearing in light of Davis filing the suggestion of bankruptcy.

On February 22, 2005, this case was reassigned to Judge C. Lynwood Smith.  However, the issues which had been referred to Judge Putnam for resolution continued to be referred to him.

On February 28, 2005, Judge Putnam directed the parties to brief the issue of whether the bankruptcy proceedings mooted or stayed the motions to hold Davis in contempt.  Defense counsel, in their motion for an extension of time (Doc. #236), filed March 9, 2005, stated that they could not represent Defendants in the contempt proceedings unless appointed by the bankruptcy court, and Samara, who was also a creditor in the bankruptcy proceeding, objected to their appointment as special counsel in the bankruptcy case.

On March 10, 2005, Samara filed a motion to set aside payment (Doc. #238) of Michael Lee's (Davis' bankruptcy attorney) retainer of $21,339.00, arguing that that payment by Davis

---

[6] This motion was referred to Judge Putnam on March 14, 2005.

violated the court's constructive trust orders.  That motion was referred to Judge Putnam on March 14, 2005.

On March 25, 2005, the parties filed a consent motion to delay ruling on the motion to release money held by the Clerk's office (Doc. #243), as agreed by the parties in the bankruptcy proceedings. Samara also filed a motion to withdraw its motion to set aside payment in violation of constructive trust orders.  (Doc. #244).  These motions were referred to Judge Putnam on March 28, 2005.

On April 27, 2005, Samara filed a motion (Doc. #247) to order DISC to pay money into court requesting that DISC pay the balance due ($1,014,125.47 plus post-judgment interest) of the partnership proceeds belonging to Samara and upon which the court had imposed a constructive trust within five days or to appear in court on a certain date and provide documentary evidence of the whereabouts of the $4.5 million invested by the DISC Corporation on April 21, 2001.  On April 29, 2005, this motion was referred to Judge Putnam.

On June 20, 2005, Samara filed a motion to amend or correct the complaint (Doc. #249) by bringing an ancillary complaint against Davis' family members who had allegedly received money belonging to Samara as a result of a fraudulent transfer by Davis.  These ancillary defendants were V. Davis, D. Davis, Suzanne Terrell ("Terrell"), and Cindy Taylor ("Taylor").  This motion was referred to Judge Putnam on June 22, 2005.

On June 22, 2005, Judge Putnam granted both Samara's motion to withdraw its motion to set aside transfer and the parties' consent motion to delay ruling on Samara's motion for release of money held by the Clerk, deferring the ruling until no sooner than July 25, 2005.

On September 7, 2005, Samara filed a motion to amend the complaint (Doc. #258) to add count against DISC premised on the theory of subsequent corporate liability (as a continuation of

International, since the latter transferred all assets and liabilities to the former) under Alabama Code § 8-9A-1-12, Alabama's Fraudulent Transfer Act.  Judge Smith granted this motion on September 8, 2005.  The amended complaint was docketed as Document #259 on September 8, 2009.

On September 12, 2005, Judge Caddell, Bankruptcy Judge, entered an order on a motion for relief from stay.  (Doc. #260-1).  In that order, Judge Caddell ruled that: (1) Samara's motion to amend the complaint to add Davis' family members could be heard by the District Court and was not affected by the automatic stay, as long as it did not affect Davis' bankruptcy estate; (2) the motion seeking to compel DISC to pay funds into court was not affected by the automatic stay and could be heard by the District Court; (3) the contempt proceedings against Davis were not affected by the automatic stay insofar as they sought to hold Davis in criminal contempt and the District Court could proceed on these motions; and (4) the automatic stay was lifted to the extent that doing so would allow the District Court to proceed with respect to any civil contempt relief, to make conclusions of law and findings of fact, and to order (but not enforce) sanctions in this regard.  With respect to that last issue, Judge Caddell indicated that the Bankruptcy Court would enforce any such sanctions deemed appropriate by the District Court.

On September 20, 2005, DISC moved the court to vacate the order granting Samara's motion to amend the complaint to add another count against DISC.  (Doc. #263).  In its motion DISC argued that: (1) DISC was denied due process in that it did not have an opportunity to respond; (2) the court did not have jurisdiction to entertain the motion since DISC was no longer a party and the appeal was pending; and (3) Plaintiff's claims under the Alabama Fraudulent Transfer Act were barred under *res judicata*.  (Doc. #261).  Also, Judge Caddell granted Davis' motion to reconsider the Bankruptcy Court's September 12, 2005 order regarding issues affected by the automatic stay.

15

On September 26, 2005, Judge Caddell issued a modified order (Doc. #267) on the issues affected by the automatic stay, only altering the first holding of his September 12, 2005 order as follows:  Samara's motion to amend the complaint to add Davis' family members could be heard by the District Court and was not affected by the automatic stay, as long as it did not affect Davis' bankruptcy estate, and, if the District Court were to allow the amendment, the Bankruptcy Court would determine if there were any fraudulent transfers and if these should be included in Davis' bankruptcy estate.

On September 30, 2005, Samara filed an amended motion to hold Davis and DISC in contempt.  (Doc. #269).  This motion was referred to Judge Putnam on October 3, 2005.

On October 3, 2005, Judge Smith issued an order (Doc. #270) vacating the court's September 8, 2005 order granting Samara's motion to amend the complaint to add a fraudulent transfer count against DISC and referring this motion by Samara to amend to Judge Putnam.  On November 21, 2005, Samara filed a motion to withdraw its motion to amend the complaint (Doc. #273), making fraudulent transfer allegations against DISC because it had filed a separate lawsuit against DISC including this count.  Judge Putnam granted this motion on January 13, 2006.

On November 23, 2005, Samara filed the related lawsuit, *Samara v. Native American Development, LLC*, Case No. 4:05-CV-2529-CLS-TMP, against various persons/entities believed to be holding funds from the Yemen Wheat Settlement.  On January 12, 2006, Judge Putnam reviewed evidence of Davis' handling of the settlement proceeds in this case, and recommended a restraining order to protect Samara's interest in the settlement.  This suit was later dismissed as a concession by Samara as the parties entered a joint motion to stay all proceedings.  Samara has since argued that this was not in lieu of a supersedeas bond, which Defendant did not post (and thus was

16

not entitled to disbursement after Eleventh Circuit vacatur and remand).  But that contention is off the mark because "the parties reached an agreement allowing Davis to post a mortgage on his property in addition to the $250,000.00 already posted so that a collateral lawsuit would be dismissed without prejudice and the pending motion for contempt would be cancelled.  All other matters would be stayed until the appeal was finalized."  (Doc. #316).

On December 7, 2005, Samara filed a motion to enforce the constructive trust orders by compelling payment of money transferred in violation of the constructive trust.  (Doc. #275).  Specifically, Samara alleged that Davis formed an LLC (the Native American Development, LLC, hereinafter "Native American") through which it paid the $250,000 into court pursuant to Judge Propst's December 6, 2004 order AND funneled more than $247,471.94 in attorneys' fees to Christian & Small, Davis' attorneys in this case.  Christian & Small claimed another $143,940.76 in the bankruptcy case as special counsel.  Native American was established by Christian & Small on behalf of Davis one week after the jury award against International.  Finally, the motion alleged that Davis lied in his deposition when he said he had no interest in the LLC, and lied to the court in Document #214 when he said he did not have liquid assets sufficient to post the supersedeas bond (even though – it was asserted – he had transferred such assets to the LLC of which he was president/manager and sole member).  Judge Smith referred this motion to Judge Putnam on December 8, 2005.

On December 22, 2005, Defendants filed a motion to continue the contempt hearing (Doc. #281) set for January 10, 2006.  That same day, Samara filed a second amended motion to hold Davis and DISC in contempt (adding DISC).  (Doc. #282).

17

On January 4, 2006, Davis withdrew his objection to Samara's motion to dismiss his bankruptcy petition as filed in bad faith. Judge Caddell dismissed Davis' bankruptcy petition as filed in bad faith on Samara's motion, finding: (1) the petition was filed in bad faith (*i.e.*, in lieu of a supersedeas bond when Davis appealed a constructive trust order in this case requiring Davis to pay Samara $1.26 million); (2) Davis refused to report his assets and transfers of assets to the bankruptcy court; (3) Davis co-mingled personal funds, corporate funds, and LLC funds and claimed and treated corporate and LLC funds as his own; (4) Davis continued to refuse to produce documents requested including copies of corporate and personal tax returns; and (5) Davis filed his Chapter 11 petition to stop and/or frustrate the seizure and/or liquidation of his assets subject to the constructive trust imposed by the U.S. District Court.

On January 10, 2006, Judge Putnam held a hearing on Samara's motions to hold Davis and DISC in contempt. At that hearing, and by written order, he granted Defendants' motions to continue the hearing until February 17, 2006.

On January 25, 2006, Samara filed a motion for release of funds held by the court (Doc. #288) since Davis did not file a supersedeas bond nor was he still in bankruptcy. Judge Putnam issued an order (Doc. #292) on January 27, 2006 to show cause why Samara's motion for release of funds should not be granted.

On February 3, 2006, Defendants filed their response to the court's show cause order and Samara's motion for release of funds (Doc. #295) alleging that: (1) Davis was attempting to secure funds; (2) Davis needed an additional forty-five days to secure funds to pay into court; (3) no monies should be released to Samara because of Samara's location (Egypt) and the pending appeal; and (4)

Samara is believed to support and/or harbor terrorists or terrorist organizations and the law criminalizes the funding of such organizations.

On February 13, 2006, the parties filed a joint motion to stay all proceedings and delay all decisions (Doc. #297) because Davis agreed to post a mortgage to the Clerk in lieu of cash. The mortgages were on real estate owned by Davis and V. Davis. This motion was granted on February 15, 2006. (Doc. #298). Judge Smith also required a report from parties due by March 14, 2006, at which time Davis must have posted bond or showed cause why all proceedings should not immediately recommence against him.

On March 1, 2006, Judge Smith entered an order by agreement of the parties (Doc. #300) staying the case pending appeal, dismissing all motions as moot once the mortgage was filed with clerk and certain conditions satisfied, and allowing the mortgage to be filed in lieu of a cash supersedeas bond.

On March 27, 2006, by agreement of the parties, Judge Smith allowed an extension of the stay to complete appraisal of the mortgage property. Davis filed the appraisal on April 6, 2006. (Doc. #307). It stated the mortgage was worth $1,134,622.33.

On April 10, 2006, Judge Smith entered an order (Doc. #308) dissolving the constructive trust and denying all pending motions as moot because of the mortgage posted by Davis.

On October 19, 2006, the Eleventh Circuit entered an opinion (which was later issued as mandate on January 29, 2007), which (1) vacated the judgment which had been entered by Judge Propst on November 17, 2004 and (2) remanded this case to the district court for further proceedings. (Doc. #314). The court of appeals expressed three areas of concern related to the November 17, 2004 judgment. First, the court was concerned with whether Davis and DISC were afforded a fair

19

opportunity to defend against the imposition of a constructive trust as the recipients of fraudulent conveyances or otherwise wrongful transfers. Though the court noted that Davis and DISC's due process rights may have been transgressed, it expressed no opinion on the issue; rather, it concluded that fairness required that Davis and DISC be afforded an opportunity to be put on notice of the claim against them, adduce evidence to defend against it, and submit both factual and legal arguments to the court in their defense. (Doc. #314 at 2).

Second, the court of appeals noted its concern that the district court never explained its rationale for setting aside the previous judgments against Davis and DISC.[7] Such decision and rationale, the opinion posited, should precede the resolution of the merits of any claim against Davis and DISC. (*Id*. at 3).

Finally, the Eleventh Circuit was of the opinion that the briefing before it was inadequate to determine whether Alabama law would warrant the imposition of a constructive trust in this situation. Because no rationale had been offered at the district court level behind imposing the constructive trust, the court of appeals was unprepared to rule on the issue (and was even unsure of whether the resolution of the question was absolutely necessary to resolve the case). The Eleventh Circuit required the district court, if it chose to impose a constructive trust on remand, to describe fully the nature of the conduct which warranted a constructive trust, as well as the court's rationale and authority for doing so. (*Id*.). The opinion explicitly stated that the court expressed "absolutely no opinion on the merits of any issue or on the appropriate result for the case." (*Id*. at 4).

---

[7] Again, the court notes that Judge Propst also never provided a rationale for dismissing those parties in the first instance.

On October 25, 2006, Samara filed a motion to reassign the case to Judge Propst (Doc. #309) due to the Eleventh Circuit's order (Doc. #314) which required: (1) a review of the November 17, 2004 order vacating prior orders; (2) an explanation of the rationale for such decision; (3) an opinion as to whether it was necessary or appropriate to hold that a constructive trust may be warranted in the absence of a fraudulent conveyance or other wrongful conduct; and (4) a full description of the nature of the conduct which warrants a constructive trust and the rationale and authority for so holding. Samara contended that since Judge Propst entered the order, only he could properly respond to the issues raised by the Eleventh Circuit.

Defendants, in their response (Doc. #310), argued:

> The court of appeals did not remand this case simply for the district court to explain its prior orders. Rather, the Court vacated the judgment against these defendants [Davis & DISC] on due process grounds and remanded for further proceedings that comport with due process. The Court concluded that the judgment which simultaneously vacated prior orders dismissing these parties from the case and entered judgments on the merits against them did not afford defendants a fair opportunity to be put on notice of the claim against them, to adduce evidence to defend against it and to submit both factual and legal arguments in their defense. The Court also concluded that before proceeding to the merits of any claim against these defendants, the district court must first decide whether and explain why the previous orders dismissing these defendants should be set aside.

> . . . .

> [The Eleventh Circuit] remanded the case for the [District] Court to "start over" and consider anew whether any basis exists for setting aside the prior judgments of dismissal in favor of these defendants, and if so, to explain the rationale for so concluding. If the court concludes that the prior judgment should be set aside, then, in accordance with the Court of Appeals' decision, these defendants must be given notice of the claim against them and that claim must proceed in accordance with the Federal Rules like any other claim – that is, defendants must be provided an opportunity to adduce evidence and to defend against the claim by submitting evidence and legal argument in opposition to summary judgment or trial.

On January 24, 2007, Samara filed a motion to require Davis to maintain security with the Clerk. (Doc. #311). Defendants filed a motion for disbursement of funds and satisfaction of the mortgage (Doc. #312) on January 30, 2007.

On April 13, 2007, after consulting Judge Propst, who did not object, Judge Smith reassigned the case to him. (Docs. #318, 319).

On May 3, 2007, Judge Propst, having decided that the Eleventh Circuit opinion raised issues requiring an objective determination based upon the record, recused himself and directed the Clerk to assign the case to an active judge other than himself or Judge Smith. (Doc. #323). The case was reassigned to the undersigned (Doc. #324), the only other district judge in the Middle Division at that time.

On May 25, 2007, Samara filed a motion to amend complaint (Doc. #328) seeking to add DISC as a defendant, add allegations to Count I and Count II (by reallegation), and to add Counts III-VIII for Conversion, Conspiracy to Convert, Alter Ego, Subsequent Corporate Liability, Instrumentality Doctrine, and Fraudulent Transfer, respectively.

On May 30, 2007, the court ordered the parties to respond to the following question:

> In light of the statement made by an officer of the court, Defendants' counsel, Richard E. Smith, to the court in a hearing held before Magistrate Judge Putnam on May 17, 2004 representing to the court that the money was in the possession of Defendants and would not be transferred or otherwise disturbed, and in light of the fact that some of the monies received from the Yemen Wheat Settlement proceeds may have been transferred to other entities or otherwise distributed in direct contradiction to Defendants' counsel's representation to this court, why should the court not maintain the funds previously deposited with the court by Defendants until the resolution of this litigation?[8]

---

[8] *See* FED. R.CIV. P. 11(b)–(c); *Universal Oil Prods. v. Root Refining Co.*, 328 U.S. 575, 580 (1946); *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 246 (1944); *Serzysko v. Chase*

(Doc. #329).

On July 23, 2007, Defendants' counsel filed a motion to withdraw.  (Doc. #343).  The undersigned denied the motion without prejudice with permission to refile once new counsel for Defendants had appeared.

On July 26, 2009, Samara filed a motion for release of funds (Doc. #344) requesting payout of the $250,000.00 held by the Clerk.  And on July 31, 2007, Samara filed a motion to require Defendants to post cash to secure Samara's interest in settlement proceeds (Doc. #350), citing alleged fraudulent transfers by Defendants.

By order dated August 2, 2007 (Doc. #351), the undersigned denied without prejudice Samara's motion to require Davis to maintain security (Doc. #311), Defendants' motion for release of funds (Doc. #312), Samara's motion to amend complaint (Doc. #328), Samara's motion to release funds to Samara (Doc. #344), and Samara's motion to require Davis to post cash to secure Samara's interest in settlement proceeds.  (Doc. #350).  The order directed the parties to refrain from filing motions until new counsel for Defendants appeared.  The undersigned also indicated that, because the only person who could fulfill the Eleventh Circuit's request to explain the rationale for setting aside previous judgments, Judge Propst, had recused himself, a fresh start would be the appropriate course of action to address the procedural and substantive concerns detailed in the Eleventh Circuit's mandate.

--------

*Manhattan Bank*, 461 F.2d 699, 702 (2d Cir.1972); *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir.1972); *In re Ocon*, Bankr. No. 06-14878-BKC-AJC; Adversary No. 06-2140-BKC-AJC-A, slip op., 2007 WL 781223 (Bankr. S. D. Fla. 2007); *Cole v. Fowlie*, No. 8:05 CV 213 T 27FAJ, 2005 WL 1463207, at *2 (M.D. Fla. June 21, 2005); *In re Smith*, 306 B.R. 5 (Bankr. M.D. Ala.2004).

On September 4, 2007, Davis filed a motion *pro se* (Doc. #358), purportedly on behalf of himself and DISC (though obviously Davis cannot represent the DISC corporation because he is not a licensed attorney). The motion requested release of funds by the clerk to Defendants.

On September 11, 2007, Davis filed a motion to dismiss with prejudice. (Doc. #359). That day, the court granted Davis' motion to appear *pro se* (Doc. #352) and denied the motion to dismiss. The court issued a written order (Doc. #360) on September 13, 2007, reiterating these rulings and ordering Christian & Small, counsel for corporate defendants, to seek advice if the Alabama State Bar advised them to seek to withdraw as counsel. If the Bar so advised, Christian & Small was to file a motion to withdraw. The order also required Davis to seek new counsel for the corporate defendants.

On September 24, 2007, the Christian & Small attorneys filed a motion to withdraw. (Doc. #362). The court granted that motion on September 26, 2007 (Doc. #365) and ordered Davis to vigorously and immediately pursue retaining alternate counsel.

On October 4, 2007, Davis filed a motion to award judgment against Samara (Doc. #371) based upon Davis' counterclaim alleging that if the joint venture agreement applied to the settlement proceeds, then Samara would owe Davis 50% of attorneys' fees and expenses connected to litigation over the settlement. That day, Davis also filed a motion to seek guidance from the court to determine issues to be addressed by the Eleventh Circuit (Doc. #372); however, that motion did not actually request relief of any kind. The court is at pains to understand its purpose. Samara responded to the motion the next day (Doc. #373), indicating that the real issues involved were whether Davis owed money to Samara under any theory and whether Samara had a valid claim to the money and mortgage held by the Clerk.

On October 18, 2007, Davis filed a petition of mandamus to enforce the Eleventh Circuit mandate. (Doc. #379). On December 7, 2007, he supplemented the petition (Doc. #383), indicating that International had filed a suggestion of bankruptcy. On December 13, 2007, the Eleventh Circuit summarily denied Davis' petition for writ of mandamus. (Doc. #385).

On December 8, 2007, Samara filed a fifth motion to amend/correct complaint. (Doc. #384).

On January 31, 2008, International filed a Suggestion of Chapter 7 Bankruptcy Upon the Record. (Doc. #386). Thereafter, on March 13, 2008, Samara moved to sever the claims against International from all other claims so that Samara could proceed on all other claims in the District Court. (Doc. #387).

On May 9, 2008, Davis filed yet another petition for the court to release funds held by the Clerk to Davis. (Doc. #391).

On September 11, 2008, Attorney J. Wilson Mitchell appeared on behalf of Defendants.[9] (Doc. #405).

The court referred the case to mediation with J. Thomas Corbett on October 17, 2008. (Doc. #410). The mediation was unsuccessful.

On January 20, 2009, the undersigned and Judge Caddell held a status conference. Judge Caddell entered an order on January 22, 2009 and this court entered an order (Doc. #413) on January 28, 2009, both indicating that the District Court and Bankruptcy Court had concurrent jurisdiction over the claims in the case. Plaintiffs were given leave to file another amended complaint.

---

[9] One of the reasons this case has been delayed is that for a substantial period of time the corporate defendants were not represented by counsel.

25

On February 20, 2009, Tazewell Shepard, Trustee in Bankruptcy and substituted Plaintiff in this action, and Samara filed a sixth amended complaint (Doc. #414) against International, DISC, Davis, Native American Development, LLC, V. Davis, Taylor, Terrell, D. Davis, and Christian & Small, LLC.

On March 13, 2009, the Bankruptcy Court entered an injunction freezing the mortgage and funds held by the District Court Clerk pending a final resolution of this matter by the District Court. (*See* Doc. #425).

Defendants filed the instant motions on March 12, 2009 (Docs. #419, 420) and April 8, 2009. (Doc. #432). Davis, International, and DISC also filed their answers (Docs. #421, 422) on March 12, 2009. Native American, Taylor, D. Davis, Terrell, and V. Davis filed their answers (Docs. #430, 431) on April 7, 2009. Christian & Small filed its answer (Doc. #433) on April 8, 2009.

## II.   Discussion

Defendants assert that the claims in Plaintiffs' sixth amended complaint are barred by *res judicata* and/or collateral estoppel. The burden of proof is on the Defendants to support their *res judicata* defense. "*Res Judicata* is . . . an affirmative defense, and the burden of proof is upon the party asserting it." *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1551 (11th Cir. 1990) (*quoting Howard v. Green*, 555 F.2d 178, 181 (8th Cir. 1977)). In order for *res judicata* to apply, Defendants must establish the following four elements: (1) a prior final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) with a substantial identity or privity between the parties; and (4) with the same claims or causes of action involved in both suits. *See Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235 (11th Cir. 1999); *see also*, *Dairyland Ins. Co. v. Jackson*, 566 So.2d 723, 725

(Ala. 1990).   However, it is clear that neither *res judicata* nor collateral estoppel applies to Defendants in regard to the Plaintiffs' sixth amended complaint.

In this case, there is simply no prior final judgment on the merits that meets the first element required by *Ragsdale*.   As Rule 54(b) provides:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.   Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be reversed at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed.R.Civ.P. 54(b).

Twice, the court has entered orders labeled as final judgments in this case.   The first such order (Doc. #204) awarded final judgment pursuant to Rule 54(b) in favor of Samara and against International in accordance with the jury verdict.   Judge Propst used Rule 54(b)'s magic words in that order as to the claims against International (determining that "there is no just reason for delay").   Judge Propst also explicitly reserved the authority to enter further orders regarding the claims of constructive trust and the enforcement of constructive trusts *and any other issues*.   The second order (Doc. #213), apparently supplanting the first, explicitly vacated any orders that purported to dismiss Davis and DISC.[10]   Never has the necessary language, required by Rule 54(b), been incorporated into

---

[10] Defendants appealed this order to the Eleventh Circuit, which vacated the order because no reasoning was provided for vacating any dismissals of Davis and DISC.   However, the Eleventh Circuit made clear that it did not express any opinion on the merits of the order, nor did it conclude that vacating prior dismissals was a violation of due process.   Rather, in the interest of fairness, the court of appeals indicated that some reasoning was required to support the district court's decision.   It is on this ground that Judge Propst recused both himself and Judge Smith.   As indicated by previous order, the undersigned is in no position to articulate why another judge of the court entered

any order or applied to any party or any claim other than those adjudicated by the jury between Samara and International.

As Judge Putnam earlier indicated, "[w]hile it is true that both Davis and DISC Corporation were dismissed from the case, no final judgment has been entered.  The court can easily re-visit and vacate those earlier decisions [and] reinstate Davis and DISC Corporation as defendants . . . ." (Doc. #187).  *See LaMarca*, 995 F.2d at 1548-49 ("Prior to the entry of judgment . . . , the court had the power to revisit the entire case.").

Furthermore, the Eleventh Circuit vacated and remanded the final judgment entered by Judge Propst.  For this reason (as well as those already stated) the first element that Defendants must show in order for *res judicata* or claim preclusion to apply is not present in this case: because there is no final judgment on the merits, Plaintiffs' claims in their sixth amended complaint are not barred.  Rather, the court has the authority to re-visit and vacate the earlier decisions and reinstate parties that were purportedly dismissed by previous orders.

Also, the only matter that any final judgment sets as "final" within the meaning of Rule 54 is the judgment in favor of Samara and against International in accordance with the jury verdict. (Doc. #213).  The sixth amended complaint does not seek to set aside or relitigate the claims resolved by the verdict or the judgment on the verdict.  Indeed, the claims contained in that particular amendment are premised on that judgment against International being valid.  In the sixth amended complaint, Plaintiffs do not suggest in any way that the judgment against International based upon

---

an order.  Nevertheless, it is clear that under Rule 54(b), there is no final judgment and the court is free to revisit any of the claims or parties.  In the interest of fairness, and consistent the Eleventh Circuit's rationale, the court will explain why, based upon the history of this case, Defendants other than International were not dismissed with prejudice.

the jury's verdict should be set aside or re-visited. Rather, the facts alleged in the sixth amended complaint are based on assertions regarding the actions of Defendants *after* judgment was entered on the jury verdict. That is, the amended complaint challenges alleged fraudulent transfers, not any of the issues related to the underlying conflict between Samara and International already tried by jury.

Thus, neither Samara, the Trustee, nor anyone in privity with either of them could have asserted claims based upon the alleged fraudulent conveyances that form the basis of the sixth amended complaint until after judgment was entered in accordance with the jury verdict. It was only then that International became a judgment debtor, and, as Plaintiffs allege, transfers of International's assets were made intending to shield those assets from its creditors. Therefore, neither *res judicata* nor claim preclusion applies to the claims in the sixth amended complaint.

The only count of the sixth amended complaint that may have been previously litigated in this case is Count XIV – Breach of Contract Against Davis and Strickland & Davis International, though, again, there is no "final judgment" on the merits as to that count. Defendants could argue (though they did not) that Judge Propst dismissed this claim against Davis with prejudice and did not vacate this dismissal with his "Final Judgment" order (Doc. #213), when he vacated dismissal of Davis as to any equitable claims.[11] However, as is made readily apparent from both the lengthy procedural history above and the Eleventh Circuit's opinion, it is wholly unclear why Judge Propst dismissed Davis as a party. Judge Propst's orders which dismissed parties (and then subsequently

---

[11] This claim was litigated with respect to International, and Samara has a judgment against International, as indicated in the complaint, in the amount of $1,258,747.52 as of November 11, 2004. This judgment against International shall remain in place, though other orders of the court will be vacated. The Trustee reasserts this claim on behalf of all creditors of the Bankruptcy Estate.

reinstated them) simply lack any reasoning or explanation.  It may be that some of these decisions were the product of agreements unknown to the undersigned and there is at least a danger that they were based on misrepresentations made to Judge Propst (or even simply his own misunderstandings). The court concludes that these issues should be resolved on the merits, not through "gotcha law" practice based on what appear to be arbitrary dismissals.  Because there has been no final judgment with respect to Davis or any other party, the court, as noted above, is free to reinstate them as parties so that the claims against them may be litigated to a just result.  Furthermore, as there is no way, after Judge Propst's recusal, for the court to know why Davis or any other party were dismissed, the interests of justice require a fresh start on these claims. Therefore, any previous orders in this case purporting to dismiss any of the defendants named in the sixth amended complaint are due to be vacated.

## III.    Conclusion

For the reasons outlined above, Defendants' motions to dismiss are due to be denied. Furthermore, any previous orders that are not a final judgment, as indicated above, to the extent they purport to dismiss any defendant named in Plaintiffs' sixth amended complaint, are due to be vacated and those defendants shall be reinstated.  The court will enter a separate order in accordance with this opinion.

**DONE** and **ORDERED** this _____5th_____ day of June, 2009.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE